UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

        Plaintiff,

v.

Tyree Cornelius Dye,

        Defendant.

_____/

Case No. 09-20105

Honorable Sean F. Cox
United States District Judge

## OPINION & ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA

Defendant Tyree Dye ("Defendant") is charged with one count of Possession with Intent to Distribute Marijuana, in violation of 21 U.S.C. § 841(a)(1), one count of Aiding and Abetting, in violation of 18 U.S.C. § 2, and one count of Conspiracy to Distribute Marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1).  The matter is currently before the Court on Defendant's Motion for Withdrawal of Guilty Plea [Def.'s Mtn., Doc. No. 153].  Defendant alleges he entered his plea involuntarily upon false statements from his attorney, he did not understand the effect of his plea, and he was not given an opportunity to review the plea agreement prior to the plea hearing.  Defendant's allegations stem from the plea agreement's four-level enhancement for Defendant's role as the "organizer" or "leader" of the charged conspiracy.  Defendant maintains that he did not have a leadership role in the conspiracy.  The parties have fully briefed the issues and the Court held an evidentiary hearing on April 15, 2011.  For the reasons discussed below, the Court **DENIES** Defendant's motion.

BACKGROUND

1

The following facts are gleaned from the parties' briefs and from testimony received at the April 15, 2011 evidentiary hearing on this matter.

On October 7, 2009, a grand jury returned a third superceding indictment that charged Defendant with conspiring to distribute 1000 kilograms of marijuana. [Indictment, Doc. No. 54]. This Court originally scheduled a plea cut-off date of November 30, 2009. [Doc. No. 89]. The Court appointed attorney David Koelzer to represent Defendant. In October 2009, Defendant terminated Mr. Koelzer as his counsel and replaced him with a retained attorney, Marlon Evans.

On November 16, 2009 the Government sent a Rule 11 plea agreement to Mr. Evans which contemplated a base offense level of 36, a guideline range of 135-168 months imprisonment, and a mandatory minimum sentence of ten years [Gov. Resp. at 3, Doc. No. 158]. The plea agreement included a four-level enhancement for being an "organizer" or "leader" of the criminal conspiracy. [Plea Agreement, Doc. No. 100]. On December 18, 2009, Mr. Evans sent a copy of the plea agreement, along with a copy of the discovery, to Defendant while he was housed at the Sanilac County jail. [Evid. Hrng. at 8]. On December 21, 2009 Mr. Evans and the Government stipulated to extend the plea cut-off date to January 11, 2010, which was consistent with the Court's plea cut-off date. [Evid. Hrng.; Gov. Ex. 4].

On January 3, 2010, Mr. Evans visited Defendant at Sanilac County jail and discussed the Rule 11 plea agreement with him. *Id*. at 10. Sanilac County inmate visitation records also reflect that Mr. Evans visited Defendant on this date. Mr. Evans testified that after reviewing the plea agreement with Defendant at this meeting, Defendant was not satisfied with its terms and decided to begin cooperating with the Government. *Id*. at 11. Mr. Evans testified that he reviewed the plea agreement with Defendant on multiple occasions. Mr. Evans stated that he

2

and the Defendant read the plea agreement together and that he discussed the issue of "leadership" with Defendant. *Id*. at 21. Mr. Evans also stated that he advised Defendant that the Government had a significant amount of evidence that tended to show Defendant was a leader of the conspiracy. *Id*. at 19.

On January 11, 2010, the date of the plea hearing, Defendant had still not signed the plea agreement. *Id*. at 12. At this point, Defendant had been in possession of the plea agreement for approximately three weeks. Mr. Evans notified Defendant that this was his last opportunity to sign the plea agreement because the Government was unwilling to grant Defendant any more time to review the agreement. *Id*. at 12. Defendant subsequently signed a Kastigar agreement and the Rule 11 plea agreement. *Id*.

That same day, Defendant pleaded guilty to Count III of the third superceding indictment. Shortly after the start of the plea hearing, there was a seven minute break during the proceedings. *Id*. at 12. Defendant testified that during these seven minutes of the plea hearing, Mr. Evans presented Defendant with the plea agreement for the first time. *Id*. 43. Mr. Evans denies this allegation. *Id*. at 23. Again, Mr. Evans emphasized at the April 15, 2011 evidentiary hearing that he had reviewed the plea agreement with Defendant on multiple occasions leading up to the plea hearing.

At the plea hearing, Defendant responded affirmatively to questions regarding his understanding of all the charges brought against him, the sentence proposed in the Rule 11, the rights he was waiving by pleading guilty, and all other consequences resulting from his plea. [*See* Plea Hrng., Doc. No. 162]. Defendant did hesitate, however, to admit that he was an "organizer" or "leader" of a criminal activity involving five or more participants. [Plea Hrng. at

3

14-15]. This portion of the transcript reads:

> The Court: For the purposes of sentencing, the parties agree, that is, you agree, that you are an organizer or a leader of a criminal activity involving five or more participants and you could reasonably foresee that the conspiracy involved the distribution of 1,000 kilograms or more of marijuana.
> Mr. Dye, was everything that I just read to you true and accurate?
> I just want the truth.
> Mr. Evans: Is it true?
> Defendant: It's true.
> The Court: I'll ask you again. Is everything that I just read to you true and accurate?
> Defendant: Yes.
> The Court: Any doubt in your mind?
> Mr. Evans: He's informed me that he has some question about leader, organizer, whether he was responsible. He hasn't agreed to anything, so he just feels that the leadership part of this, he has questions with it. But he understands that it's part of the plea. He has a personal opinion about what a leader is. Explain to the Court.
> The Court: Well, is he willing to accept that he was an organizer or a leader of this conspiracy involving five or more participants, which I've just read to him?
> Defendant: Can I just have like 30 seconds?
> The Court: Have a moment with Mr. Evans.
>              (Brief pause in the proceedings.)
> Defendant: Yes.
> The Court: Do you agree with that, that you were an organizer or a leader of a criminal activity involving five or more participants?
> Defendant: Yes.

*Id*.

Defendant testified at the evidentiary hearing that it was at this point that Mr. Evans stated to him that the Rule 11 was a "mere formality" and that "everything in this rule 11 can be changed . . . with cooperation." [Evid. Hrng. at 45]. Mr. Evans denies these allegations as well.

Instead, Mr. Evans stated that at this time he told Defendant that "appropriate objections could be made." *Id*. at 26.  Mr. Evans also stated, "I never told him any reasons I was going to guarantee him or promise that for some reason he wasn't going to be held as a leader." *Id*.

Later at the plea hearing, Defendant answered "no" when asked if anyone had tried to force him to plead guilty, and Defendant answered "yes" when asked if he is pleading freely and voluntarily.  *Id*. at 21.  Moreover, Defendant explicitly stated, "I agreed to distribute 1,000 kilos of marijuana."  *Id*.  Finally, the Court found Defendant's plea to be "knowingly, freely and voluntarily made."  *Id*. at 23.

On March 9, 2010, almost three months after pleading guilty, the Court received a letter from Defendant in which he requested that the Court allow him to withdraw his guilty plea.  The Court held a hearing on the matter on April 23, 2010.  At the hearing, Mr. Evans moved to withdraw from his representation of Defendant.  [Doc. No. 108].  Mr. Evans notified the Court that the Defendant provided him with motions drafted in legal form, complete with legal citations, that Defendant wished to have Mr. Evans file on his behalf.  [April 23 Hrng. at 6, Doc. No. 163].  Mr. Evans addressed his suspicions that Defendant was relying on poor advice from a jailhouse lawyer.  *Id*.  Mr. Evans suggested that he did not want to be held accountable for any actions taken by Defendant that have been influenced by persons from within the jail.  *Id.* at 7.  Mr. Evans further stated, "[Defendant] has represented that I have not, I guess, thoroughly or gone over the discovery with him.  We beg to differ on that issue as well, because I've gone up to Sanilac several times, Your Honor, and I've had the opportunity to go over the discovery with him."  *Id*.  Mr. Evans also stated:

> So he feels that for some reason I have misled him into taking a plea
> . . . Your Honor, I explained to him the nature of the plea, I explained

> to him what the objections were. Again, we went through the process. However, he was uneasy about it, but the Court has adjourned this matter once before in order for us to have an opportunity to get together.
>
> ***
>
> And then at that point, Your Honor, again, I guess he felt that he was forced to take this plea, but in actuality, Your Honor, it was at that point, the Court wanted to know exactly were we going to trial, which would have been in January or were we going to take the plea.
>
> And that was the second time that the Court has informed us that we would not be adjourning this matter again. So I informed him of that. He understood it. But at that time, Your Honor, I guess reluctantly, he took the plea. And now he's had an opportunity to consider, I guess, additional information, seek out the advice of other individuals, and at that, Your Honor, he feels that now he doesn't want to take the plea. He wants to withdraw the plea.

*Id*. at 8-9.

The Court granted Mr. Evan's request to withdraw as counsel that same day and on April 26, 2010, the Court appointed William Swor to represent Defendant. [Doc. No. 108]. On August 17, 2010 the Court received an email from Mr. Swor stating that Defendant did not wish to proceed with his motion to withdraw his plea and that he would continue on to sentencing.

On September 24, 2010, more than eight months after pleading guilty, Defendant, proceeding *pro se*, attempted to file a Motion to Withdraw Plea of Guilty. [Pro se mtn., Doc. No. 147]. The *pro se* motion was stricken by this Court because Defendant was represented by Mr. Swor at the time Defendant filed the motion. Attached to Defendant's stricken motion was an affidavit from co-conspirator Robert Martin, who was housed with Defendant at Sanilac County jail. Martin had been cooperating with the Government and provided information regarding Defendant's role in the conspiracy. Martin's affidavit sought to retract some of the statements he made to the Government regarding Defendant. Upon learning that Defendant filed

6

a *pro se* motion to withdraw his plea, Mr. Swor moved to withdraw as counsel for Defendant. [Doc. No. 145].

On October 1, 2010, the Court held a status conference with all the parties. At the hearing, Defendant requested another adjournment so that he may have more time to decide whether he wanted maintain Mr. Swor has his attorney and whether to proceed with sentencing. [Oct.1 Hrng., at 6].

On October 6, 2010, the Court held a hearing on Mr. Swor's motion to withdraw as Defendant's counsel. The Court granted Mr. Swor's request to withdraw and appointed Henry Scharg as Defendant's attorney. Mr. Scharg is Defendant's fourth attorney in this case.

On January 20, 2011, Defendant finally filed a Motion to Withdraw Plea of Guilty through his counsel. The Government filed its response to Defendant's motion on January 26, 2011, and Defendant replied on February 27, 2011 [Def.'s Reply, Doc. No. 160].

## STANDARD

Federal Rule of Criminal Procedure 11(d) governs the withdrawal of guilty pleas and provides:

> (d) Withdrawing a Guilty or Nolo Contendere Plea. A defendant may withdraw a plea of guilty or nolo contendere:
>
> > (1) before the court accepts the plea, for any reason or no reason; or
> >
> > (2) after the court accepts the plea, but before it imposes sentence if:
> >
> > > (A) the court rejects a plea agreement under Rule 11(c)(5); or
> > >
> > > (B) the defendant can show a fair and just reason for requesting the withdrawal.

7

FED. R. CRIM. P. 11(d).  "This rule is designed 'to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty.'" *United States v. Ellis*, 470 F.3d 275, 280-81 (6th Cir. 2006) (quoting *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991)).  "A defendant does not have an absolute right to withdraw a guilty plea and bears the burden of proving that he is entitled to withdraw his guilty plea." *Id*.  "The permission to withdraw a guilty plea prior to sentencing is a matter within the broad discretion of the district court," and is reviewed on appeal for abuse of discretion.  *United States v. Valdez,* 362 F.3d 903, 912 (6th Cir. 2004).

## ANALYSIS

In this case, Defendant has motioned to withdraw his guilty plea after the Court accepted his plea.  Therefore, pursuant to Rule 11(d)(2)(B), the defendant must show "a fair and just reason for requesting the withdrawal."  In exercising its discretion, a district court must weigh a number of factors when determining whether a defendant has met this burden.  The factors include:

   1) the amount of time that elapsed between the plea and the motion to withdraw it;

   2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings;

   3) whether the defendant has asserted or maintained his innocence;

   4) the circumstances underlying the entry of the guilty plea;

   5) the defendant's nature and background;

   6) the degree to which the defendant has had prior experience with the criminal justice system; and

7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Ellis*, 470 F.3d at 281. These factors are a general, non-exclusive list and no one factor is controlling. *Id.*

After considering these factors, the Court finds that Defendant has not met his burden of showing that the withdrawal of his guilty plea is for a fair and just reason.

1.  Amount Of Time Elapsed Between Plea And Motion To Withdraw:

With respect to this first factor, "[t]he shorter the delay, the more likely a motion to withdraw will be granted, and a defendant's reasons for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time." *Id.* In this case, three months had elapsed between the time of Defendant's guilty plea and his letter to the Court requesting to withdraw his plea. Moreover, five months after his initial request, Defendant, through his attorney, Mr. Swor, notified the Court that he was no longer pursuing his request to withdraw his plea. Thus, Defendant had at least eight months to contemplate his guilty plea before he fully committed to withdrawing. Additionally, the instant motion was filed almost a year from the date of Defendant's guilty plea. This factor weighs heavily against granting the motion.

2.  Presence Or Absence Of Valid Reason For Failing To Move To Withdraw Earlier:

Defendant alleges that he did not move to withdraw his guilty plea earlier because both he, and his mother, could not contact Mr. Evans after the plea hearing. [Def.'s Reply at 2.] Defendant alleges that Mr. Evans did not respond to Defendant's correspondence. *Id.* Furthermore, after Mr. Evans withdrew as Defendant's counsel and the Court appointed Mr. Swor, Defendant alleges that Mr. Swor resisted filing a motion to withdraw because he wanted

to salvage the plea agreement. Nonetheless, three months had elapsed between Defendant's guilty plea and his letter to the Court. Defendant did not file his stricken, *pro se*, motion to withdraw until four months after Mr. Swor filed his first appearance on behalf of Defendant.

The Sixth Circuit has previously "sustained denials of motions to withdraw guilty pleas on the basis of delays shorter" than fourth months. *United States v. Pluta*, 144 F.3d 968, 973 (6th Cir. 1998). In this case, Defendant flop-flopped between proceeding to sentencing and attempting to withdraw his plea for more than eight months. During this period, Defendant asserts that Mr. Swor "resisted" his efforts to withdraw his plea. [Def.'s Reply at 1]. In his August 17, 2010 email, however, Mr. Swor states, "I wish to inform you that I have met with Mr. Dye and he does not wish to proceed with his motion to withdraw his plea; he simply believed that he had no other way to address his concerns." Thus, it appears that Defendant's current wish to withdraw his plea is inconsistent with the wishes that he relayed to his counsel seven months ago.

Defendant's reason for not moving to withdraw his plea earlier is not convincing. This factor weighs in favor of denying Defendant's motion.

3.  Innocence:

Defendant has not continually asserted his innocence. In fact, in his stricken, *pro se* Motion to Withdraw Plea, Defendant states, "It is also important to note that the defendant clearly intends to 'Accept Responsibility' for his actions as they relate to this conspiracy. He simply seeks to distinguish his level of culpability from those of his co-conspirators after the time of his withdrawal." [Pro se mtn. at 3]. Defendant also does not claim to be innocent in the instant Motion to Withdraw Guilty Plea.

Rather, Defendant merely denies his "leadership role" in the conspiracy. *Id*. at 7. At the plea hearing, and after brief discussion with Mr. Evans, Defendant answered "yes" when posed with the question, "Do you agree with that, that you were an organizer or a leader of a criminal activity involving five or more participants?"

This factor weighs slightly against granting Defendant's motion.

4.      Circumstances Underlying Guilty Plea:

Defendant asserts that he entered his plea "involuntarily, without effective assistance of counsel, and without understanding of the nature of the charges, the effect of the plea, or of his constitutional rights." [Def.'s Mtn. at 1.] As stated above, Defendant claims that he never met with his former attorney, Mr. Evans, prior to the plea hearing to discuss the Rule 11 plea agreement. *Id*. Defendant's motion provides, "Mr. Evans never provided Mr. Dye with a copy of the plea agreement until just prior to the plea hearing and never discussed the provisions of the plea agreement or the sentencing guideline ranges with Mr. Dye until he was escorted into the courtroom by U.S. Marshals." *Id*. at 3.

Based on the evidence and testimony received at the April 15, 2011 evidentiary hearing, the Court finds that these allegations are false. In addition to Mr. Evans' convincing testimony on the matter, Mr. Evans' office records clearly indicate that a copy of the Rule 11 plea agreement and a copy of the discovery were sent to Defendant on December 18, 2009. [Evid. Hrng., Gov. Ex. 3]. Moreover, Sanilac County jail records confirm that Mr. Evans met with Defendant on at least one occasion (January 3, 2011) to discuss the plea agreement with Defendant.

It was not until after Defendant interacted with his co-defendants at Sanilac County jail,

11

namely Robert Martin, that he began pursuing his plea withdrawal. [Evid. Hrng. at 32]. The evidence indicates that Defendant knowingly and voluntarily entered his plea and that he is unhappy with the outcome of his attempt to cooperate with the Government.

This factor weighs heavily against granting Defendant's motion.

5.  Defendant's Nature And Background:

Defendant's nature and background also weigh in favor of denying his motion. Defendant is a high school and college graduate. [Def.'s Mtn. at 3.] Defendant graduated from Ferris State University with a degree in health care administration. *Id*. Defendant is also very articulate and well-spoken. Moreover, the numerous *pro se* letters and motions that Defendant has filed with the Court indicate that Defendant is intelligent and understood the nature of the charges and the consequences of his guilty plea.

6.  Defendant's Prior Experience With The Criminal Justice System:

According to the May 4, 2010 Presentence Report, Defendant has four misdemeanor convictions, spanning from 1992 to 1999, and no felony convictions. [Presentence Report at 10.] In 1995, Defendant was charged with fleeing and eluding a police officer, which is a felony. Defendant was represented by an attorney and the felony charge was dismissed after Defendant pleaded guilty to reckless driving. *Gov's Resp*. at 12. Although Defendant has had some experience with the criminal justice system, and has been represented by counsel in criminal matters, none of Defendant's convictions are drug-related and he has never previously entered into Rule 11 Plea Agreement. This factor weighs slightly in favor of granting Defendant's motion.

7.  Potential Prejudice To The Government:

The last factor a court may consider is the potential prejudice to the Government if Defendant's motion to withdraw his guilty plea is granted. In its response to Defendant's motion, the Government contends that unavailability of witnesses may prejudice the Government's ability to prosecute Defendant. *Id*. A number of co-defendants to this multi-defendant, drug-conspiracy case agreed to cooperate against Defendant. The co-defendants' cooperation was a motivating factor for Defendant's guilty plea. *Id*. All co-defendants have since been sentenced and many of them received substantial assistance reductions as a result of their cooperation. *Id*. at 13. The Government contends that it has lost any leverage it might have had regarding the cooperation of these co-defendants at a trial for this matter and, thus, the co-defendants are essentially unavailable. *See United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996).

As an example of prejudice to the Government, the Government stated that co-defendant Robert Martin, who was eligible for the safety valve at his sentencing, provided information to the Government implicating Defendant in the crimes charged. [Gov.'s Resp. at 13]. As stated above, Defendant obtained an affidavit from Martin on April 27, 2010, while both Martin and Defendant were incarcerated together at the Sanilac County jail. The Government states that Martin's affidavit directly contradicts the information he provided to the Government. *Id*. Martin was sentenced on July 9, 2010, but his affidavit was not disclosed until September 24, 2010. *Id*.

Defendant merely asserts that the Government has remedies to deal with co-defendants who originally promise to testify against a defendant, but who later refuse. [Def.'s Reply at 4.] Defendant states that these remedies will minimize any prejudice to the Government. *Id*.

13

It is clear that the Government will be prejudiced if the Court allows Defendant to withdraw his guilty plea. Any potential testimony lost as a result of a co-defendant's failure to cooperate will severely hamper the prosecution of Defendant.

This factor weighs in favor of denying Defendant's motion to withdraw his guilty plea.

CONCLUSION & ORDER

For the reasons above, the Court **DENIES** Defendant's Motion to Withdraw Plea.

**IT IS SO ORDERED.**

        s/Sean F. Cox
        Sean F. Cox
        United States District Judge

Dated: May 2, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 2, 2011, by electronic and/or ordinary mail.

        s/Jennifer Hernandez
        Case Manager